Douglas E. Flaherty
774 Mays. Blvd. 10-691,
Incline Village, NV 89451
714-473-0508
TahoeBlue365@gmail.com
*Plaintiff Pro Se*

Paid Amt $ 405.80 Date FEB 18 2026
Receipt # 3-1266 Initials GA
Paid Amt $ 405.80 Date FEB 17 2026
Receipt # 3-1266 Initials GA

Filed Received Entered Served On
Counsel/Parties of Record
FEB 18 2026
Clerk US District Court
District of Nevada
Deputy

Filed ✓Received Entered Served On
Counsel/Parties of Record
FEB 17 2026
Clerk US District Court
District of Nevada
By: Deputy

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DOUGLAS FLAHERTY<br><br>Plaintiff,<br><br>v.<br><br>TAHOE REGIONAL PLANNING AGENCY,<br><br>Defendant. | Case No: 3:26-cv-00119<br><br>COMPLAINT FOR JUDICIAL REVIEW, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF<br><br>(Prejudicial Abuse of Discretion Under Article VI(j)(5) of the Tahoe Regional Planning Compact) |

## I. NATURE OF THE ACTION

1. The Tahoe Regional Planning Compact ("Compact") is a congressionally approved bi-state interstate compact between the States of California and Nevada, with the force of federal

law. Pub. L. No. 96-551, 94 Stat. 3233 (1980) (codified as a note to 16 U.S.C. § 668dd). The Compact governs regional land-use approvals within the Lake Tahoe Basin and provides for judicial review of Tahoe Regional Planning Agency actions under Article VI(j)(5) (94 Stat. 3248).

2. This action challenges the December 17, 2025 approval by the Tahoe Regional Planning Agency ("TRPA") of amendments to the Washoe County 2025 Washoe Tahoe Area Plan and related amendments to Chapter 31 of the TRPA Code of Ordinances.

3. TRPA approved the amendments and issued a Finding of No Significant Effect ("FONSE") and findings of conformance pursuant to Article VI(j)(5) of the Tahoe Regional Planning Compact ("Compact"), Pub. L. No. 96-551, 94 Stat. 3233 (1980), as amended, codified at 16 U.S.C. § 668dd note.

4. Prior to TRPA review and conformance, Washoe County adopted the local amendments on August 26, 2025 through Bill No. 1934 (Ordinance No. 1743) (Ex. A-1 at 66), expressly conditioning their effectiveness upon TRPA's subsequent approval. Accordingly, TRPA's December 17, 2025 action constitutes the final agency action challenged herein.

5. Plaintiff alleges that TRPA's approval is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence in light of the whole record, and not made in the manner required by law because TRPA:

a. Failed to meaningfully analyze wildfire evacuation time and roadway capacity constraints;

b. Relied on regional allocation ceilings and tiered programmatic documents that did not analyze current evacuation conditions in Incline Village;

c. Failed to address substantial new information presented during public review;

d. Failed to conduct supplemental environmental review required by TRPA Code of Ordinances Chapter 3.

6. Plaintiff seeks declaratory and injunctive relief vacating TRPA's approval and remanding for lawful environmental review consistent with the Compact.

7. These failures are particularly acute because the challenged amendments increase building height (up to 65 feet), residential density, and land coverage directly within Incline Village and Crystal Bay town centers along the primary SR-28 evacuation corridor.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, namely the Tahoe Regional Planning Compact, Pub. L. No. 96-551, 94 Stat. 3233 (1980), codified at 16 U.S.C. § 668dd note.

9. Venue is proper in this District under 28 U.S.C. § 1391 because TRPA maintains offices in Nevada, the challenged action occurred in Nevada, and the impacts affect Incline Village and Crystal Bay, Nevada.

## . III. PARTIES

10. Plaintiff's real property and primary residence are located within the primary wildfire evacuation corridor along State Route 28 in Incline Village's Town Center (Ex. B-3 at 81–82).

11. The July 2025 Initial Environmental Checklist (IEC) prepared by Ascent Environmental expressly found: (i) a "less than significant" impact on "possible interference with

an emergency evacuation plan" (Ex. A-3 at 3-35–3-36); (ii) the project "will not have environmental impacts which will cause substantial adverse effects on human beings, either directly or indirectly" (Ex. A-3 at 3-69–3-70); and (iii) no "impacts which are individually limited, but cumulatively considerable" (Ex. A-3 at 3-69–3-70).

12. In reality, the challenged amendments to the Tahoe Area Plan (Ordinance No. 2025-07, Ex. A-2 at 1–3) will concentrate additional residents, visitors, and vehicles in and around Incline Village and Crystal Bay Town Center chokepoints along the SR-28 corridor by increasing building heights from 56 feet to 65 feet, removing density caps, and allowing up to 100% land coverage.

13. These changes will materially increase population and traffic surge during no-notice wildfire evacuation (Ex. B-3 at 65). Retired fire department professionals have warned that concentrated town-center development creates dangerous evacuation choke points — a concern Plaintiff submitted as part of the administrative record and cited as applicable to all Lake Tahoe Basin Town Centers (Ex. B-8 at 1–6; Ex. B-1 at 8). Modeling further shows that no-notice scenarios involve confusion and hysteria likely to reduce transportation system efficiency, vehicle breakdowns contributing to bottlenecks, non-compliance with orders, and trips potentially taking 6–10 times longer under congested conditions (Ex. B-4 at 65).

14. Considering these factors, the amendments will worsen Incline Village's documented six-hour minimum evacuation time (Ex. B-3 at 65, Table 18), extend Plaintiff's own evacuation times beyond safety margins, and produce westbound SR-28 cross-jurisdictional benchmark times of 3–8+ hours under higher vehicle loads (Ex. B-5 at 3, 8). They will also amplify peak-season roadway demand from sustained post-2021 recreational surges on the East Shore Trail (trips increased +261% in 2022 and remained elevated through 2025; Ex. B-6 at 1)

and Sand Harbor State Park (annual visitation increased +10% in 2022 and +8% in 2023; Ex. B-7 at 1).

15. This substantial evidence demonstrates cumulatively considerable direct and indirect adverse impacts to human safety in the wildland-urban interface and adjacent increased-density town centers, directly contradicting and negating every one of the 2025 IEC's "less than significant" or "no impact" findings on evacuation interference, substantial adverse human effects, and cumulative impacts. TRPA's failure to address this substantial contrary evidence in the administrative record renders its adoption of the amendments arbitrary, capricious, lacking substantial evidentiary support, and a prejudicial abuse of discretion under Article VI(j)(5) of the Tahoe Regional Planning Compact.

16. This constitutes a concrete, particularized, and imminent injury traceable to the TRPA approval.

## IV. STATUTORY FRAMEWORK

**17.** The Compact establishes TRPA as the regional planning authority for the Lake Tahoe Basin and vests it with responsibility to ensure that development approvals are supported by substantial evidence and consistent with basin-wide environmental and public safety thresholds.

## V. LEGAL FRAMEWORK

18. Article VI(b) of the Tahoe Regional Planning Compact, Pub. L. No. 96-551, 94 Stat. 3233 (1980), codified at 16 U.S.C. § 668dd note, provides that no project may be approved unless it is found to comply with the Regional Plan and applicable ordinances, and such findings must be based on substantial evidence in the record.

19. Article VI(j)(5) of the Compact provides that judicial review of legislative acts shall determine whether the act was arbitrary, capricious, lacking substantial evidentiary support, or whether the agency failed to proceed in a manner required by law. A prejudicial abuse of discretion is established where the decision is not supported by substantial evidence in light of the whole record.

20. TRPA Code of Ordinances Chapter 3 (as amended Dec. 13, 2023) requires environmental documentation sufficient to support findings and requires supplemental environmental review where new information of substantial importance indicates that a project may have significant environmental effects.

## VI. EXHAUSTION

21. Plaintiff satisfied the exhaustion requirements of Article VI(j)(5) by appearing and submitting written objections before the TRPA Advisory Planning Commission on November 12, 2025 (B-1 at 1-13) and before the TRPA Governing Board on December 17, 2025 (B-1 at 14-15) prior to final approval.

22. Plaintiff raised objections concerning wildfire evacuation time, roadway capacity constraints, reliance on outdated evacuation baselines, improper tiering, and failure to supplement environmental review.

23. No further exhaustion of local or state remedies is required for judicial review of TRPA action under the Compact.

**VII. FACTUAL ALLEGATIONS**

24. TRPA's approval relied on a July 2025 Initial Environmental Checklist ("IEC") (Ex. A-3 at 3-35 - 3-38; 3-69-3.70) prepared by Ascent Environmental, Inc.

25. A review of staff reports in connection with the 2025 Washoe County level Tahoe Area Plan adoption process indicate that the July 2025 IEC was not part of the Washoe County Planning Commission or Washoe County Board of Supervisors adoption process on August 26, 2025 through Bill No. 1934 (Ordinance No. 1743) (Ex. A-1 at 66) and was first introduced during TRPA's conformity review process as part of the TRPA Advisory Planning Commission (APC) meeting on November 12, 2025. As a result, the public and decision-makers were deprived of any meaningful opportunity to evaluate, respond to, or supplement the environmental analysis prior to TRPA's approval. This sequencing limited full administrative scrutiny of critical environmental assumptions and constrained the scope of meaningful public review. (Ex. A-2 at1).

26. The Ascent scope of work governing preparation of the IEC assumed that the environmental review could be completed without substantial field data collection, modeling, or specialized technical studies, including traffic modeling, unless later authorized (Ex. A-5 at 2).

27. The IEC concluded that the amendments would have a "less than significant" (Ex. A-3 at 3-36) impact on possible interference with an emergency evacuation plan.

28. Washoe County's 2022 Mass Care and Evacuation Plan identifies an approximate six-hour evacuation time for Incline Village under modeled conditions. (Ex. B-3 at 65) Public statements from County representatives have acknowledged that this estimate was based on prior resident population assumptions and is now outdated given current visitation and seasonal

population levels. Despite this acknowledged baseline and its limitations, the July 2025 IEC does not reconcile how additional density within constrained SR-28 corridor town centers would affect already extended evacuation timing

29. During public review, petitions from 250+ residents were submitted by Plaintiff including as well as Plaintiff's written comments raising substantial evidence, including:

a. The 2022 Washoe County Mass Care and Evacuation Plan identifying a six-hour evacuation (Ex. B-3 at 65 ) baseline for Incline Village, later acknowledged as outdated;

b. The October 2024 Independent Lake Tahoe Basin Wildfire Evacuation Analysis estimating evacuation durations of approximately 7–9+ hours (Ex. B-4 at 29 ) under no-notice wildfire conditions;

c. The Placer County OES contraflow comparison documenting Kings Beach, CA 3+ to 8+ hr. evacuation delays (Ex. B-5 at 3) affecting the shared SR-28 corridor;

d. Post-2021 visitation increases and seasonal population surges affecting roadway demand (Ex.B-6 at 1; B-7at1),

e. Publicly available monitoring data for the Lake Tahoe East Shore Trail in and directly adjacent to Incline Village, Nevada demonstrate substantial seasonal increases in recreational use during peak wildfire months (May through September). East Shore Trail trip counts increased from approximately 29,000 trips during the May 1–September 15 period in 2021 (partial season) to approximately 148,000 in 2022, 185,000 in 2023, 210,000 in 2024, and approximately 195,000 in 2025 for the same period. These increases reflect materially changed seasonal population density and roadway demand conditions within and adjacent to the SR-28 evacuation corridor. The July 2025 Initial Environmental Checklist did not analyze this post-2021 visitation

surge, did not evaluate its impact on evacuation demand, and did not reconcile these conditions with its conclusion of a "less than significant" impact on emergency evacuation. (Ex. B-6 at 1; Ex. B-7 at 1)

30. In addition to citizen petitions and technical evacuation modeling submitted during the administrative process, the record also contains a letter authored by multiple retired fire department professionals with wildfire response and evacuation experience. (Ex. B-8 at 1–2) The letter raises concerns regarding concentrated town center development, surge traffic conditions, and the potential creation of wildfire evacuation choke points under high-hazard wildfire conditions. The July 2025 Initial Environmental Checklist does not reflect analysis or response (Ex. A-3 at 3-35–3-38) to this expert evacuation-risk input.

31. TRPA did not quantify evacuation time or roadway throughput capacity, did not reconcile the six-hour baseline with contrary modeling, and did not conduct supplemental environmental review before issuing its FONSE (Ex. A-3 at 3-35–3-38).

32. The administrative record further contained evidence that evacuation routes serving Incline Village and Crystal Bay depend upon westbound travel along SR-28 through Kings Beach, California. The Placer County 2024 Ladris AI Contraflow Comparison demonstrated evacuation durations substantially exceeding previously adopted baseline estimates for the same corridor. TRPA's July 2025 IEC does not reconcile these cross-jurisdictional evacuation timing conflicts or analyze the cumulative evacuation demand imposed on the shared SR-28 corridor (Ex. B-5 at 1).

## VIII. FIRST CAUSE OF ACTION

33. Violation of the Tahoe Regional Planning Compact

(Arbitrary, Capricious, Abuse of Discretion, and Unsupported by Substantial Evidence)

34. Plaintiff realleges and incorporates all preceding paragraphs.

**A. Failure to Analyze Evacuation Time and Capacity.**

35. TRPA concluded the amendments would have a "less than significant" effect on emergency evacuation. Plaintiff does not challenge TRPA's policy preferences but alleges that the agency failed to evaluate specific record evidence concerning quantified evacuation timing and roadway capacity constraints before concluding that impacts would be less than significant.

36. The July 2025 Initial Environmental Checklist does not analyze whether the amendments would interfere with the projected six-hour evacuation time identified in the 2022 Washoe County Mass Care and Evacuation Plan for Incline Village (Ex. B-3 at 1–2), nor does it evaluate roadway throughput capacity along SR-28 or SR-431. Although the IEC references existing emergency response and hazard mitigation documents—including the Geographic Response Plan, the Washoe County regional evacuation and shelter plan, and the Washoe County Regional Hazard Mitigation Plan—it does not analyze whether the amendments would materially interfere with the projected six-hour evacuation time (Ex. A-3 at 3-36.). At minimum, reconciliation of documented six-hour baseline evacuation timing, quantified contraflow projections ranging from five to eight hours along the same corridor, and seasonal population surge data required explanation of how increased development intensity would not materially extend evacuation duration.

37. The July 2025 Initial Environmental Checklist further states that the North Lake Tahoe Fire Protection District's Tahoe Wildfire Preparedness Guide identifies SR 431 and SR 28 (both directions) as evacuation routes serving Incline Village and Crystal Bay. (Ex. A-3 at 3-36.)

However, the IEC does not analyze evacuation timing in either direction of travel and does not reconcile these designated routes with the two wildfire evacuation timing analyses contained in the administrative record—namely, the 2022 Washoe County Mass Care and Evacuation Plan (Ex. B-3 at 65;81-82) and the 2024 Placer County Ladris AI Contraflow Comparison (Ex. B-5 at 3). Identification of evacuation routes without quantitative timing or capacity analysis does not constitute substantial evidence that evacuation will function adequately under increased development intensity. The administrative record contained quantified evacuation timing data and corridor-specific dependency evidence that required analytical reconciliation. The IEC does not demonstrate how that evidence was weighed or incorporated into TRPA's findings.

38. TRPA relied on the existence of emergency planning documents rather than analyzing whether evacuation demand would exceed available roadway capacity under current or projected conditions. The mere existence of emergency response plans does not constitute substantial evidence that evacuation will function adequately when population, density, and seasonal visitation increase within constrained wildfire evacuation corridors.

39. The administrative record contained evidence demonstrating that wildfire evacuation from Incline Village and Crystal Bay relies substantially on westbound travel along State Route 28 through Kings Beach, California (Ex. B-1 at 10–11; Ex. B-4 at 23, 29; Ex. B-5 at 3, 6.

40. The 2024 Placer County Ladris AI Contraflow Comparison projected evacuation times for Kings Beach ranging from approximately 5 hours 8 minutes (with contraflow) to 8 hours 20 minutes (without contraflow), representing increases of approximately 16% to 125% over previously adopted Placer County baseline evacuation times. (Ex. B-5 at 3–6.

41. The administrative record also contained Washoe County's projected six-hour evacuation time for Incline Village. (Ex. B-3 at 65.) When viewed together, these data reflect evacuation durations along the same SR-28 corridor that substantially exceed prior planning assumptions.

42. The July 2025 Initial Environmental Checklist does not analyze SR-28 cross-jurisdictional evacuation dependency, does not reconcile the Placer County contraflow findings with Washoe County evacuation timing, and does not quantify cumulative evacuation duration along the shared SR-28 corridor under no-notice wildfire conditions and evacuations. The absence of quantitative analysis addressing record evidence of materially increased evacuation duration renders the agency's conclusion unsupported by substantial evidence in light of the whole record.

43. The Compact's regional planning mandate requires that TRPA evaluate impacts affecting shared interstate evacuation corridors where development approvals in one Area Plan materially affect evacuation feasibility in another..

44. By failing to analyze or meaningfully respond to specific record evidence demonstrating materially increased evacuation duration across state lines, TRPA failed to consider an important aspect of the problem and issued findings unsupported by substantial evidence in light of the whole record. Where the administrative record reflects that evacuation from one jurisdiction necessarily depends upon roadway segments located within another jurisdiction, the failure to evaluate cumulative evacuation duration along that shared corridor constitutes a failure to consider an important aspect of the problem.

45. Although judicial review under Article VI(j)(5) is deferential, deference does not extend to ignoring specific contradictory evidence contained in the administrative record or issuing findings unsupported by analysis reconciling that evidence.

**B. Failure to Make Required Findings Supported by Substantial Evidence (Compact Art. VI(b))**

**B. Failure to Make Required Findings Supported by Substantial Evidence (Compact Art. VI(b))**

**46.** Article VI(b) requires written findings of Regional Plan compliance supported by substantial evidence in the record. The TRPA approval contains no such findings, and the record contains no substantial evidence that the Project complies with the Regional Plan or the applicable environmental threshold carrying capacities. This constitutes a prejudicial abuse of discretion under Article VI(j)(5) of the Compact.

47. TRPA issued findings of conformance and a FONSE predicated on the July 2025 IEC and prior programmatic documents, without independently evaluating current evacuation conditions reflected in the administrative record.

48. The July 2025 IEC asserts that the proposed amendments are consistent with the 2012 Regional Plan Update and applicable thresholds, yet it does not provide does not provide quantitative evacuation modeling, updated roadway capacity analysis, or reconciliation of contrary evacuation timing evidence contained in the administrative record, including cross-jurisdictional SR-28 dependency.. Conclusory statements of consistency, unsupported by analysis addressing documented evacuation constraints, do not establish a rational connection between the evidence and TRPA's required findings under the Compact. The IEC does not demonstrate

how the cited programmatic documents evaluated the specific evacuation timing conflicts raised in the administrative record.

49. Because TRPA failed to analyze evacuation time, failed to address substantial new evidence, and relied on generalized assertions of consistency without evidentiary support, Accordingly, the required findings of conformance lack substantial evidentiary support when viewed in light of the whole record.

50. TRPA therefore failed to proceed in a manner required by law in violation of Article VI(b).

**C. Misuse of Tiering and Reliance on Outdated Programmatic Document**

51. The prior programmatic documents relied upon by TRPA,—the 2012 Regional Plan Update (RPU) environmental review and subsequent programmatic environmental documents—did not evaluate cross-jurisdictional wildfire evacuation dependency along SR-28, did not analyze post-2021 seasonal visitation increases, and did not incorporate the 2024 Placer County Ladris AI Contraflow Comparison modeling reflected in the administrative record (Ex. A-3 at 1-1; 3-35-3-38; 3-69-3-70). Tiering cannot substitute for analysis of new evidence of materially increased evacuation duration contained in the whole administrative record.

52. TRPA expressly relied upon the 2012 Regional Plan environmental review and the 2023 Phase 2 Housing Amendments Initial Environmental Checklist in concluding that the Washoe Tahoe Area Plan amendments would not significantly affect emergency evacuation (Ex. A-2 at 5); Ex. A-3 at 1-1).

53. Those prior programmatic documents did not evaluate Incline Village–specific evacuation timing under post-2021 seasonal visitation conditions, did not assess cumulative

evacuation demand along the SR-28 corridor under current seasonal population levels, and did not incorporate assessment of the 2024 Placer OES Contra Flow Comparison, the October 2024 wildfire evacuation modeling estimating 7–9+ hour evacuation durations under no-notice wildfire conditions.

54. Tiering does not relieve an agency of its obligation to analyze new information of substantial importance or materially changed circumstances bearing directly on impact severity. Where prior environmental documents did not evaluate the specific impact at issue under current conditions, reliance on tiering is arbitrary and capricious. Article VI(b) of the Compact requires that required findings be supported by substantial evidence in light of the whole record, including new information bearing directly on public health and safety impacts. The Compact does not permit tiering to displace the obligation to address new information of substantial importance that bears directly on public health and safety impacts reflected in the administrative record.

55. By relying on prior programmatic assumptions rather than analyzing current evacuation demand, roadway throughput capacity, and surge seasonal population data within the Washoe Tahoe Area Plan boundary, TRPA failed to proceed in a manner required by law and rendered its findings unsupported by substantial evidence in light of the whole record.

**D. Failure to Conduct Required Supplemental Environmental Review (Code Chapter 3)**

56. In addition to its obligations under the Compact, TRPA's own Code of Ordinances requires, TRPA Code Chapter 3 requires supplemental environmental review where new information of substantial importance indicates potential significant effects.

57. The administrative record contained substantial new information regarding evacuation timing, cross-jurisdictional constraints, post-2021 visitation increases, and outdated baselines.

58. Rather than preparing supplemental environmental review, TRPA relied on an IEC that assumed no modeling and concluded, without quantitative evacuation analysis, that impacts were less than significant.

59. In light of the whole record, TRPA's failure to prepare supplemental environmental review constituted a failure to proceed in a manner required by law.

**E. Failure to Address Contrary Evidence**

60. The record contains evidence of new information that shows a significant increase in the current Incline Village, NV Washoe County evacuation plan six-hour evacuation baseline and modeling estimating significantly longer evacuation durations.

61. The administrative record also included a letter authored by retired fire department professionals warning that increased density, height, and coverage in concentrated town centers within the Wildland Urban Interface may create evacuation "choke points" (Ex. B-8 at 1-6) during sudden surge wildfire events. The July 2025 Initial Environmental Checklist does not reflect any discussion or evaluation of these professional evacuation-risk concerns, nor does it analyze concentrated surge conditions in Washoe Tahoe town centers. The agency's failure to address competent subject-matter evidence in the record further renders its findings unsupported by substantial evidence in light of the whole record.

62. TRPA did not meaningfully analyze or reconcile this evidence.

63. An agency acts arbitrarily when it fails to provide a reasoned explanation or when its decision runs counter to the evidence before it.

64. TRPA's December 17, 2025 approval constitutes a prejudicial abuse of discretion under Article VI(J)(5).

**IX. SECOND CAUSE OF ACTION**

**A. Failure to Proceed in the Manner Required by Law (Article VI(j)(5) of the Tahoe Regional Planning Compact)**

**65.** A review of the staff reports and administrative record for the 2025 Washoe County Tahoe Area Plan adoption process shows that the July 2025 Initial Environmental Checklist (IEC) was **not** part of the Washoe County Planning Commission or Board of County Commissioners review and adoption on August 26, 2025 (Bill No. 1934 / Ordinance No. 1743; Ex. A-1 at 66). The IEC was first introduced during TRPA's conformity review at the Advisory Planning Commission (APC) hearing on November 12, 2025.

**66.** As a result, the public and local decision-makers were deprived of any meaningful opportunity to review, comment on, or supplement the environmental analysis before Washoe County adopted the amendments and before TRPA issued its findings of conformance and FONSE. This sequencing limited full administrative scrutiny of critical environmental assumptions (including evacuation and traffic impacts) and constrained the scope of meaningful public participation required under TRPA Code Chapter 3 (Environmental Documentation) and Article VI of the Tahoe Regional Planning Compact. (Ex. A-2 at 1).

**67.** TRPA's reliance on this belated IEC analysis, without adequate opportunity for local-level input and review, constitutes a failure to proceed in the manner required by law under

Article VI(j)(5) of the Compact, rendering the challenged approvals arbitrary, capricious, and an abuse of discretion.

**X. PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

1. Declare TRPA's December 17, 2025 approvals arbitrary, capricious, unsupported by substantial evidence, and not in accordance with law under the Compact;

2. Vacate and set aside the challenged approvals;

3. Remand the matter to TRPA with instructions to conduct supplemental environmental review consistent with Compact Article VI(b), Article VI(j)(5), and TRPA Code Chapter 3;

4. Enjoin implementation of the amendments pending lawful review;

5. Award Plaintiff his costs of suit and any other relief authorized by law; and

6. Grant such other relief as the Court deems just and proper.

DATED: February 17, 2026

Respectfully submitted,

Douglas Flaherty

Plaintiff, Pro Se

774 Mays Blvd. 10-691

Incline Village, NV 89451

(714) 473-0508